Michael D. Mayfield (8237)
Elaina M. Maragakis (7929)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
mmayfield@rqn.com
emaragakis@rqn.com

*Attorneys for Plaintiff ARUP Laboratories, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ARUP LABORATORIES, INC., a Utah corporation,<br><br>    Plaintiff,<br><br>v.<br><br>PACIFIC MEDICAL LABORATORY, INC., a California corporation,<br><br>    Defendant. | **ARUP'S MOTION FOR SANCTIONS**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Case No. 2:20-cv-00186<br><br>State Case No. 200901303<br>(Third Judicial District of Utah)<br><br>Judge David Barlow<br><br>Magistrate Daphne A. Oberg |

### STATEMENT OF RELIEF REQUESTED

Plaintiff ARUP Laboratories, Inc. ("ARUP") hereby moves this Court ("Motion") to impose the following sanctions pursuant to Federal Rule of Civil Procedure 37:

1.      Attorney's fees and costs incurred in connection with the failure by PML, Dr. Reza Zarghami ("Dr. Reza"), and Dr. Jalal Zargami ("Dr. Jalal") to appear at duly noticed depositions, without valid explanation, on August 3 and 5, 2021;

August 17, 2021, in connection with PML's failure to properly prepare its Rule 30(b)(6)

designee, as well as evasive responses and obstreperous conduct;

3.    Attorney's fees and costs incurred in connection with the discovery dispute heard

by the Court on August 19, 2021, in which the Court ruled in ARUP's favor;

4.    Taking designated facts as established for purposes of the action relating to

PML's failure to properly prepare for and testify during its Rule 30(b)(6) deposition; and

5.    Attorney's fees and costs incurred in connection with bringing this Motion

pursuant to Rule 37(b)(2).

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................ 5

**STATEMENT OF FACTS** ......................................................................................... 5

    **Discovery Cutoffs** ................................................................................................. 5

    **PML's Failure to Cooperate in Scheduling Depositions** .................................... 6

    **PML, Dr. Reza, and Dr. Jalal's Failure to Appear** ............................................ 7

    **Rule 30(b)(6) Deposition** ...................................................................................... 9

    **Topics for which Dr. Reza was not prepared to testify as the sole Rule 30(b)(6) designee** .................................................................................. 10

        *The Agreement, the First Amendment to the Agreement, and Fee Schedules* ................................................................................... 10

        *Receipt of Invoices* .......................................................................... 11

        *Four Invoices For Which ARUP Seeks Payment in the Amended Complaint* ............................................................................... 13

        *CPT Codes* ....................................................................................... 14

        *Audit* ................................................................................................. 16

    **Other Obstreperous Behavior** ............................................................................ 17

    **Designation of Witness** ....................................................................................... 19

    **Conduct During Zoom Deposition** ..................................................................... 20

    **Hearing Before the Court Regarding Conduct During Zoom Deposition** ............. 24

**ARGUMENT** ............................................................................................................. 25

    A.    **PML, Dr. Reza, and Dr. Jalal Should be Sanctioned for its Failure to Appear for its Depositions on August 3 and 5, 2021 After Receiving Proper Notice.** ........................................................................... 25

    B.    **PML and Dr. Reza Should Be Sanctioned for Their Evasive Responses and Obstreperous Conduct.** ......................................................... 28

**C.**  **PML Should Be Sanctioned for Failing to Prepare its 30(b)(6) Designee.** ........................................................................................ 29

**CONCLUSION** ..................................................................................................... 34

**MEET AND CONFER CERTIFICATION**................................................................ 34

## INTRODUCTION

This Motion is based on PML's repeated conduct that has unnecessarily delayed the completion of discovery, obstructed the deposition process, and forced ARUP to incur unnecessary fees and costs.  First, PML failed to cooperate in scheduling depositions, which resulted in multiple extensions of the fact discovery cutoff.  Second, when ARUP was finally able to set the depositions of PML and two of its key witnesses, Dr. Reza and Dr. Jalal, they failed to appear at their depositions.  Third, when the Rule 30(b)(6) deposition was ultimately rescheduled, Dr. Reza—the sole Rule 30(b)(6) designee—failed to properly prepare for the deposition, and as a result, was unable to testify on PML's behalf on critical topics.  Finally, the conduct of PML's California counsel during Dr. Reza's deposition required intervention by the Court.  For these reasons, sanctions are warranted.

## STATEMENT OF FACTS

1.     This case was filed in the Third Judicial District Court, Salt Lake County, Utah, on February 14, 2020, and later removed to this Court on March 19, 2020.  Compl. (Dkt. #2.) ARUP's filed its First Amended Counterclaim on December 17, 2020.  Am. Compl. (Dkt. #38.)

### Discovery Cutoffs

2.     The original fact discovery cutoff was on November 1, 2020.  Sch. Order (Dkt. #23).  The Second Amended Scheduling Order extended the fact discovery cutoff to June 1, 2021.  Second Am. Sch. Order (Dkt. #40).  The Third Amended Scheduling Order further extended the fact discovery cutoff to August 15, 2021.  Third Am. Sch. Order (Dkt. #46).

3.     Because PML, Dr. Reza, and Dr. J[alal] failed to appear for their depositions (discussed in detail below) prior to the August 15, 2021 cutoff, the discovery cutoff was

informally extended again by agreement until August 19, 2021 to allow PML's depositions to be rescheduled.

4.      PML has indicated that it intends to move the Court for entry of a Fourth Amended Scheduling Order extending the fact discovery cutoff yet again.  To date, PML has not filed a motion seeking a Fourth Amended Scheduling Order.

**PML's Failure to Cooperate in Scheduling Depositions**

5.      On multiple occasions, ARUP proposed dates for taking the depositions of PML, Dr. Reza, and Dr. Jalal, but those efforts were unsuccessful:

- On March 10, 2021, ARUP proposed the week of April 12, 2021 for PML's depositions.  Email dated 3/10/21 to D. Nelson from E. Maragakis, attached as **Exhibit A.**  PML did not agree to those dates.

- On April 15, 2021, ARUP proposed the dates of May 5, 6, or 7, 2021 for PML's depositions.  Email dated 4/15/21 to D. Nelson from E. Maragakis, Ex. A.  PML did not respond, so ARUP followed up on April 19, 2021 and again on April 22, 2021.  *Id.*  Eventually PML responded that its witnesses were not available on those dates.

- On May 4, 2021, ARUP proposed the dates of May 20 and 24, 2021 for PML's depositions.  Email dated 5/4/21 to D. Nelson from E. Maragakis, Ex. A.   PML's counsel was unavailable on those dates, and proposed extending the fact discovery 120 days.  ARUP agreed to a 60-day extension, until August 15, 2021.

- On May 13, 2021, ARUP proposed the dates of June 2, 4, 7, 9, or 11 for PML's depositions.  Email dated 5/13/21 to D. Nelson from E. Maragakis, Ex. A.  ARUP

renewed this request on May 19, 2021.  *Id.*  PML finally tentatively agreed to schedule the depositions on June 9 and 11, 2021.  Because the fact discovery cutoff was extended until August 15, 2021, the depositions did not take place on June 9 and 11.

- On June 21, 2021, ARUP proposed the dates of July 12-15 or August 3-5, 2021 for PML's depositions.  Email dated 6/21/21 to D. Nelson from E. Maragakis, Ex. A.  PML failed to confirm availability, and accordingly, ARUP sent follow up emails requesting confirmation on June 25, 2021, and July 6, 2021.  *Id.*

- Having had no response, on July 7, 2021, ARUP's counsel set the depositions for August 3 and 5, 2021, and sent the following:

    i.   Notice of Deposition for Dr. Reza Zarghami and Subpoena (with waiver)

    ii.  Notice of Deposition for Dr. Jalal Zarghami and Subpoena (with waiver)

    iii. Notice of Rule 30(b)(6) Deposition for PML for August 3 and 5, 2021

Email dated 7/7/2021 to D. Nelson from N. Bottema, attached as **Exhibit B**.

6.      On August 2, 2021, the day before the Rule 30(b)(6) deposition was scheduled to begin on August 3, 2021, PML's counsel notified ARUP's counsel that Dr. Reza would be PML's Rule 30(b)(6) designee for all topics.  Email dated 8/2/2021 to E. Maragakis from D. Nelson, attached as **Exhibit C**.

### PML, Dr. Reza, and Dr. Jalal's Failure to Appear

7.      On August 2, 2021, at approximately 5:00 p.m., PML's counsel called ARUP's counsel and stated that that Dr. Reza and Dr. Jalal were not planning to attend their depositions on August 3 or 5, either in their personal capacities or in their Rule 30(b)(6) capacities.  *See*

*generally* Rule 30(b)(6) Dep. of PML/Deposition of R. Zarghami 8/3/21 ("1st PML/Dr. Reza

Dep."), attached as **Exhibit D**.

8.      Later that evening, PML's counsel then indicated that his clients would be

available for their depositions on August 16, 17, or 18, 2021.  Email dated 8/2/21 to E.

Maragakis from D. Nelson, Ex. C.

9.      On August 3, 2021, ARUP's counsel and PML's counsel appeared via Zoom at

the time scheduled for the deposition of PML and Dr. Reza and made a record of Dr. Reza's

failure to appear.  *See* 1st PML/Dr. Reza Dep., Ex. D.

10.     On August 5, 2021, ARUP's counsel and PML's counsel appeared via Zoom at the

time scheduled for the deposition of Dr. Jalal and made a record of Dr. Jalal's failure to appear.

*See* Deposition of J. Zarghami ("1st Dr. Jalal Dep.") dated 8/5/2021, attached as **Exhibit E**.

11.     Dr. Reza (individually and on behalf of PML) later stated that he didn't appear for

his and PML's deposition on August 3, 2021 because of a "miscommunication,"[1] PML 30(b)(6)

Dep./R. Zarghami Dep. 8/17/21 ("2nd PML/Dr. Reza Dep.") at 11:3-16, attached as **Exhibit F**,

and Dr. Jalal claimed a lack of "knowledge" that his deposition was scheduled for August 5,

2021.  And, although Dr. Jalal "[didn't] remember" what he was doing on August 5, he

confirmed he was in California. Dr. Jalal Dep. at 17:11-17, attached as **Exhibit G**.

12.     Without waiving any of its rights, ARUP rescheduled the depositions for

PML/Dr. Reza and Dr. Jalal for August 17 and 19, 2021, respectively.  *See* 2nd PML/Dr. Reza

Dep. at 7:20-24 ("So this deposition is proceeding without waiving any of ARUP's rights,

---

[1] Any "miscommunication" was presumably between PML's attorney and his clients, as ARUP clearly gave notice
and PML's attorney was clearly informed and aware of the deposition. *See* Email dated 8/2/2021 to E. Maragakis
from D. Nelson, Ex. C.

including, but not limited to, seeking sanctions relating to Dr. Zarghami's failure to appear pursuant to the subpoena and PML's failure to appear pursuant to the Rule 30(b)(6) deposition."), Ex. F.

13.    On August 16, 2021, PML's counsel again confirmed that Dr. Reza Zarghami would be the sole Rule 30(b)(6) designee, and that as a result, "Dr. J[alal]'s deposition will be an individual deposition."  Email dated 8/16/2021 to E. Maragakis from D. Nelson, attached as **Exhibit H**.  *See also* 2nd PML/Dr. Reza Dep. at 7:25-8:5 ("[C]ounsel [has] indicated that Dr. Reza Zarghami is going to be the Rule 30(b)(6) designee for PML on all topics."), Ex. F.

14.    PML never filed any objection to the Rule 30(b)(6) notice.

### Rule 30(b)(6) Deposition

15.    On August 17, 2021, ARUP took PML's Rule 30(b)(6) deposition, as well as the individual deposition of Dr. Reza.  *See generally* 2nd PML/Dr. Reza Dep., Ex. F.

16.    Dr. Reza testified that in preparation for the deposition, he "spoke briefly" with his counsel for "[l]ess than an hour.  That's about it."  *Id.* at 10:18-25.  He also admitted that the first time he ever reviewed the Rule 30(b)(6) Notice was the day before the deposition.  *Id.* at 217:24-218:5.  He later testified inconsistently about his purported "preparation" for the Rule 30(b)(6) deposition, initially testifying that he did not review any documents,[2] but then, after breaks, later changing his testimony to state that he reviewed some minimal documents in preparation for the deposition.  *Id.* at 218:6-226:24.

---

[2] Dr. Reza testified:

        Q.    Did you review any documents?
        A.    No.

2nd PML/Dr. Reza Dep. at 10:24-25, Ex. F.

<u>**Topics for which Dr. Reza was not prepared to testify as the sole Rule 30(b)(6) designee**</u>

*The Agreement, the First Amendment to the Agreement, and Fee Schedules*

17.     Topic 1 requested a designee on the paragraphs of PML's Amended Counterclaim relating specifically to the fee schedules.  Rule 30(b)(6) Dep. Notice at 3, attached as **Exhibit I**. ("ARUP requests that individual(s) be made available to testify regarding the following topics: 1. The ***Answer and Amended Counterclaim*** filed by PML in this matter, including but not limited to the bases for the allegations contained in the following paragraphs of the Amended Counterclaim:  ¶ . . . 17, 18") (emphasis added).

18.     Topics 2 and 3 of the Rule 30(b)(6) notice required a designee on the following:

Topic 2:  The records, knowledge, communications, and information of PML relating to the ***Agreement and the First Amendment*** to Reference Laboratory Services Agreement dated May 1, 2015 (ARUP 7638), ***including negotiations***, meetings, correspondence, and communications between PML and ARUP relating thereto.

Topic 3:  The records, knowledge, communications, and information of PML relating to . . . ***fee schedules***

Rule 30(b)(6) Dep. Notice at 3-4, Ex. I.

19.     Although Topics 1, 2 and 3 very clearly and specifically identified the testimony required, Dr. Reza could not testify on behalf of PML as to:

- negotiations regarding the fee schedule, which was Exhibit A to the Agreement[3]

---

[3] Dr. Reza testified:

Q.      I do want to ask you because you're appearing as a representative of PML, if you can describe the negotiations around the fee schedule, the nature of those, what was discussed, what was proposed, and so forth?

A.      I really can't say since I wasn't involved.
        . . .

Q.      Are you prepared to discuss the negotiations on behalf of PML today?

A.      For anything that I know, yes, I can.

- the First Amendment to the Agreement.[4]

*Receipt of Invoices*

20.     Topic 5 required a Rule 30(b)(6) designee to testify as to the following:

The records, knowledge, communications, and information of PML relating to the use of ARUP's services, the placement of orders for services, and the ***receipt and payment of invoices***.

*Id.* at 4.

21.     Dr. Reza was not prepared to testify on PML's behalf regarding the receipt and

payment of invoices.  Dr. Reza avoided answering even the most basic questions such as whether

---

Q.      And you understand that you have an obligation as a representative of PML to educate yourself of the topics that have been designated?

A.      Sure.

Q.      Okay.  So let me just make the record clear.  . . . *[C]an you testify on behalf of PML today as to the specific negotiations regarding the fee schedule?*

A.      *No.*

*Id.* at 18:7-19:16 (emphasis added).

He further testified:

Q.      When PML signed this agreement, was there an Exhibit A attached?

A.      I don't know.  I didn't sign it.

Q.      You're not prepared to testify as to Exhibit A to the Agreement?

A.      I'm not sure it was attached when it was being signed.

*Id.* at 35:23-36:7.

[4] Dr. Reza testified:

Q.      [I]t's titled "first amendment to Reference Laboratory Services Agreement."  Do you recognize this document?

A.      No.

Q.      You've never seen this document before?

A.      No.

Q.      Are you prepared to testify on behalf of PML today as to the nature of this document?

A.      No.

*Id.* at 22:3-11.

11

anyone at PML would review an invoice from ARUP when it was received.[5]

22.    Instead, Dr. Reza referred the questions to his father, "Dr. J[alal]," who was not a Rule 30(b)(6) designee on any topic, responding to questions by stating "You'll have to ask Dr. J[alal] that," "You'll have to ask J[alal]," "J[alal]reviews those," and "You'll have to ask these specific questions to J[alal]."[6]

23.    Dr. Reza was likewise unprepared to testify regarding a written provision contained in ARUP's invoices which is central to this dispute:

> Q.    My question is, Dr. Zarghami, you received invoices. Do you ever—does PML ever recall seeing the phrase that says, "All claims, requests for adjustments, or notification of errors must be made within 30 days of the invoice date or charges are considered accepted"?
>
> A.    No, but you'll have to ask Dr. J[alal] that one. He reviews all these.
>
> Q.    You're not prepared to testify on behalf of PML as to that correct?
>
> A.    Not specifically.
>
> Q.    Or even generally?

---

[5] Dr. Reza testified:

> Q.    And when PML received an invoice, would anyone review the invoice?
> A.    You'll have to ask Dr. J[alal] that.
> Q.    Well, this is a topic on which you're designated to testify. Does someone at PML review the invoice when it receives it?
> A.    You'll have to ask Dr. J[alal].
> Q.    Is it your testimony you're not prepared to testify on behalf of PML as to who reviews the invoices?
> A.    No. I can tell you Dr. J[alal] reviews those.
> Q.    . . . Would PML then compare the invoice to the then current fee schedule?
> A.    You'll have to—I'm sorry. You'll have to ask these specific questions to Dr. J[alal] because I am not omnipotent in every little detail he does with how he reviews invoices, so I'm sorry. You'll have to ask him these questions.

*Id.* at 67:23-68:15.

[6]        *Id.*

12

A.    You'll have to ask Dr. J.

. . .

Q.    Did PML read this statement on this invoice?

A.    You'll have to ask Dr. J.

. . .

Q.    Are you prepared to testify on behalf of PML as to whether PML was aware of the phraseology at the bottom of this invoice?

A.    No.

2nd PML/Dr. Reza Dep. at 73:14-25, 77:8-20, Ex. F.

*Four Invoices For Which ARUP Seeks Payment in the Amended Complaint*

24.    Topic 3 required PML's designee to testify regarding "The records, knowledge, communications, and information of PML relating to . . . the use of ARUP's services, the placement of orders for services, and the ***receipt and payment of invoices*** . . . ." Rule 30(b)(6) Dep. Notice at 4 (emphasis added), Ex. I.

25.    Dr. Reza was not prepared to testify on PML's behalf as to whether ARUP delivered the services listed on the four invoices that are the subject of the Amended Complaint.[7]

---

[7] Dr. Reza testified on behalf of PML:

Q.  Okay.  Let me ask you to turn to and . . . [w]e'll mark this Exhibit L. (Exhibit L marked.)
. . .
[Counsel identified invoices dated November 1, 2019, December 1, 2019, January 1, 2020, February 1, 2020]
[Q]:Do you recognize that these are invoices that PML received from ARUP, correct?
A.  Yes.
Q.  And did ARUP deliver the services that were listed on these invoices?
A.  Maybe.
Q.  Why do you say maybe?
A.  Because I'm not sure.  These are ones that are -- should be deferred to Dr. J[alal].
Q.  Okay.
A.  He handles all of these.
. . .
Q.  I'm going to refer you back to the 30(b)(6) deposition, which topic 3 says, "The records, knowledge, communications, and information of PML relating to the use of ARUP's services, the placement of orders for services, and the receipt and payment of invoices and fee schedule."  Do you see that?

*CPT Codes*

26.     In paragraphs 21 and 22 of its First Amended Counterclaim, PML alleges that

"ARUP breached its obligation to bill in conformance with appropriate CPT codes for some of

the services it provided to Pacific Medical."  First Am. Countercl. ¶ 21.  PML further alleges that

it "has discovered that certain tests performed by ARUP were coded inappropriately, which had

the effect of reducing and/or eliminating the amount of reimbursement that Pacific Medical was

able to obtain from Medi-Cal, compared with the Amounts that Pacific Medical would have been

reimbursed had ARUP coded these tests appropriately."  *Id.* ¶ 22.

---

. . .
Q.   Yep.
A.   Okay.
Q.   And that's one of the topics for which you were supposed to be prepared to testify, so I want to ask you specific questions about these invoices.  Okay?
A.   I'm prepared to testify that this is the responsibility that is delegated to Dr. J[alal].
Q.   Well, unfortunately, this is the -- this is the time that you have been designated to speak on this topic. And if that --
A.   I can tell you whatever I'm aware of, sure.
Q.   Okay.  Well, we'll take that up after, but let me ask you this.  Going back to tab 4, the first invoice, which is dated 11/1/2019.
A.   Okay.
Q.   Did ARUP deliver the services listed on these invoices -- on this invoice?
A.   I don't know.
Q.   You're not prepared to testify on behalf of PML if there are any services on this invoice that were not provided by ARUP?
A.   No.
Q.   Okay.  Let's turn to the next invoice, which is the one dated 12/1/2019.  Did ARUP deliver the services listed on this invoice?
A.   I don't know.
Q.   You're not prepared under topic 3 to testify on PML's behalf as to the terms of this specific invoice?
A.   No.
. . .
Q.   Okay.  Do you have -- does PML acknowledge having received these invoices?
A.   I don't know.
Q.   You don't know?
A.   Dr. J[alal] must have.
Q.   You're not prepared to testify as to whether it received these invoices?
A.   Yes.
Q.   You are?
A.   Yeah, we'll say we received it.

PML/Dr. Reza Dep. at 109:2-113:4, 115:16-116:23, Ex. F.

14

27.    Topic 1 of the Rule 30(b)(6) notice specifically identified Paragraphs 21-22 of the Amended Counterclaim as topics for which a designee must testify. *See* Rule 30(b)(6) Dep. Notice at 3, Ex. C ("The Answer and Amended Counterclaim filed by PML in this matter, including but not limited to the bases for the allegations contained in the following paragraphs: of the Amended Counterclaim:  ¶¶ . . . 21, 22.")

28.    PML initially testified that it never confirmed independently whether the CPT codes on invoices were accurate, and further testified that PML had no reason to believe that any of the CPT codes that were ever provided were incorrect.  2nd PML/Dr. Reza Dep. at 78:3-5, 79:4-7, Ex. F.

29.    However, when pressed on this issue, PML refused to directly answer very direct and clear questions about its own allegation.  Instead, PML/Dr. Reza engaged in lengthy, rambling, circuitous narratives about CPT codes.[8]

---

[8] Dr. Reza/PML testified:

> Q.  Do you have any reason to believe that any of the CPT codes that were ever provided were incorrect?
> A.  No.  No.  If it was, it was a big mistake on ARUP's side.
> Q.  Okay.  So you're not aware of any CPT codes that ARUP provided that were incorrect, correct?
> A.  I mean, you're saying that the CPT code shouldn't be relied on the invoice.
> Q.  No.  My question is are you aware of any CPT codes that were provided by ARUP to PML that you believed were incorrect?
> A.  I'm not sure -- again, you're not being specific enough.  I can tell you, for example, they might have ordered the wrong test that we had requested, and that resulted in the wrong CPT code.
> Q.  Are you aware of any?
> A.  I'm sorry.  What you're asking me is for lamotrigine, is that the wrong CPT code?  For example, whatever they say is the description versus the CPT code, that is something that nobody should get wrong.
> Q.  Okay.  Let me ask my original question again. Are you aware of any instances in which ARUP provided a CPT code where the code was not accurate?
> A.  Accurate referring to what?  What is it being accurate to?
> Q.  Either it was the wrong test, it was the wrong code, or any other error in the CPT code.
> A.  You're not making any sense.
> Q.  No, I'm making sense, Dr. Zarghami.  Are you aware of any CPT code that ARUP provided?  And if you're not, that's fine, but I just want to know is one of your claims that we provided the wrong CPT codes to PML?  That's my question.
> A.  With regards to what?  Did they issue the wrong CPT code to us because they ordered the wrong test, or are you talking about a general sense that they posted something that this is the test, and this is the CPT

15

*Audit*

30.     Paragraphs 22-24 of PML's First Amended Counterclaim alleges that PML has "discovered" that certain tests were either coded inappropriately, not billed to any CPT Code, or were "inappropriately charged."  First Am. Counterclaim ¶¶ 22-24.

31.     Topic 1 of the Rule 30(b)(6) notice specifically identified Paragraphs 22-24 of the Amended Counterclaim as topics for which a designee must testify.  See Rule 30(b)(6) Dep. Notice at 3, Ex. I ("The Answer and Amended Counterclaim filed by PML in this matter, including but not limited to the bases for the allegations contained in the following paragraphs: of the Amended Counterclaim:  ¶¶ 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 31, 32, 33, 33, 37, 44, 45.").

32.     However, PML/Dr. Reza were not prepared to discuss the basis of the allegations about incorrect CPT codes, nor were PML/Dr. Reza prepared to testify about PML's "audit" which supposedly identified these issues with CPT codes.

---

code?  The way you're asking it, there's variable ways to answer that question.  So you have to be a little more specific with a scenario.  What you're asking me is more scenario based, and what you're presenting is too many vague possibilities.  I'm not going to answer it unless you can be specific.  What type of CPT error are you asking?  Are you saying did they issue the wrong code to the wrong test, what they posted on here, that that CPT code shouldn't go to that test, or did they run the wrong CPT code from what we had expected and had requested?
Q.  I'm asking you whether PML as part of its counterclaim contends that any of the -- that there's any problem with the CPT codes that ARUP put on its invoices?  Is that part of your claim or not?
A.  Yes.
Q.  Okay.  Explain that to me.
A.  So you can get more clarification from Dr. J[alal].  But from my -- what I had just tried to explain to you is that by them using the wrong CPT code, it's the same thing as they ordered the wrong test.  We didn't want that test.  So CPT code --
Q.  How would you know?  How would you know that?
A.  By looking at the invoice.
Q.  That they have ordered the wrong test?
A.  We would see the invoice, and we would see that they charged us for something that wasn't what we asked.  And it would be obvious because it was something that was charged at list price.  It wasn't on our fee schedule, or if it was, it was something we never priced out before.  Again, I could -- this question I could spend about five hours answering because it's still too vague.  I'm sorry.

2nd PML/Dr. Reza Dep. at 79:4-81:24, Ex. F.

33.    Specifically, in response to the question about the methodology of the audit, PML/Dr. Reza responded "You'll have to ask Dr. J," before explaining "at the minimum, no, is that he would use the same resources, whether—and multiple resources, fee schedules, Medicare reimbursement rates, Medi-Cal reimbursement rates, and go through every CPT code one by one and see which ones were charged correctly and which ones weren't." 2nd PML/Dr. Reza Dep. at 122:19-123:3, Ex. F.  However, PML/Dr. Reza could not testify as to the date range of the audit, whether notes were taken, or, most importantly, the results of the audit:

> Q.    Okay.  I want to talk a little bit more about that audit.  Were notes taken during that audit?
>
> A.    I don't know.  I've already told you everything I could possibly know about the audit.  I wasn't there during the audit.  I don't know when he did the audit, what time, what pieces of paper he had in front of him.  I wasn't there for that.  Sorry.
>
> Q.    Do you know the results of the audit?
>
> A.    No.
>
> Q.    PML was not aware of what the results of the audit were?
>
> A.    No.

*Id.* at 123:9-20.

**<u>Other Obstreperous Behavior</u>**

34.    PML/Dr. Reza also engaged in other obstreperous behavior designed to create confusion.  For example, despite the fact that PML/Dr. Reza was asked very direct, clear questions, he would respond by saying "I have no idea what you're asking me,"[9] and "I think it

---

[9] PML/Dr. Reza testified:

> Q.  I'm not talking about that.  The allegation is CPT coding requirements that must be followed to obtain reimbursement from Medi-Cal.  My question is how do you know that that's the case?
> A.  I have no idea what you're asking me.

speaks for itself."[10]

35.    For example, PML/Dr. Reza would not directly answer the simple question as to whether certain terms were stated in the Agreement, instead making non-responsive statement such as "it's a very weird question,"[11] arguing that the agreement "doesn't have to" contain

---

Q.  What is the basis for your statement ARUP had knowledge of appropriate CPT coding requirements that must be followed to obtain reimbursement from Medi-Cal?
A.  I think this is just a standard that --basically it's like saying ARUP is sticking to laboratory law, that if they are a CLIA licensed or CAP licensed, in order for them to bill for a test, they know what CPT code they are required to use.
Q.  Okay.
A.  It's very straightforward.  I think it speaks for itself.  I don't think there's any basis or interpretation. I'm sorry.  But this is -- there's nothing more than what's already written on there.

2nd PML/Dr. Reza Dep. at 90:4-21, Ex. F.

[10] *Id.*

[11] PML/Dr. Reza testified:

Q.  Okay.  And that's not my question.  My question is isn't it true that there is no contractual provision that requires PML to bill in conformance with appropriate CPT codes in order to ensure that Pacific Medical's ability to obtain reimbursement from Medi-Cal was not diminished or reduced?
MR. NELSON:  Objection.
Q.  (By Ms. Maragakis) That's nowhere in any contract.
MR. NELSON:  Objection; calls for a legal conclusion, lacks foundation, incomplete hypothetical.
THE WITNESS:  I'm afraid I can't answer that question.
Q.  (By Ms. Maragakis) No, you can answer the question.  Where in the contract does it say that?  Dr. Zarghami, is there a place in the -- in the agreement or in Exhibit A or in any document that says that ARUP has to bill to ensure that Pacific Medical's ability to obtain reimbursement from Medi-Cal is not diminished or reduced?
MR. NELSON:  Same objections asked and answered.
THE WITNESS:  What you're asking is basically saying like -- it's a very weird question.  I want to make sure I answer this appropriately.  I would say what you're saying letter for letter, word for word, no, it's not in the agreement.  However, I can say that the way that our business was conducted between the two parties, that is how it was.  So the actions of ARUP were to that.
Q.  (By Ms. Maragakis) Okay.  So if I understand your answer, just so we're clear, you agree that there's no written contractual obligation that requires ARUP to bill in order to ensure that PML's ability to retain – to obtain reimbursement from Medi-Cal is not diminished or reduced.  There's nothing in the agreement, correct? That's your testimony?
MR. NELSON:  Objection to the extent it may mischaracterize his prior testimony.
THE WITNESS:  Yeah, I'm afraid I can't answer that one.

*Id.* at 94:7-95:7.

specific terms,[12] or refusing to respond at all, stating "I'm afraid I can't answer that question."[13]

### Designation of Witness

36.    During the deposition, after hearing the questions by ARUP's counsel on

designated topics, as well as Dr. Reza's answers on behalf of PML, PML's counsel attempted to

re-designate Dr. Jalal for certain topics:

> MR. NELSON:  To the extent you have designated topics and are asking questions that
> are specific to the billings and invoices as they came in and the practice, procedure and
> what was actually reviewed, Dr. J[alal] will be the 30(b)(6) designee for those topics,
> most of which you're aware of that Dr. Reza indicated that Dr. J[alal] will have more
> specialized knowledge on that.
>
> MS. MARAGAKIS:  Well, I appreciate that.  But, unfortunately, I think that the time for
> designating people has passed.  And we had understood that Dr. Reza was going to testify
> on all the topics.  Now that he's given his responses, I don't think it's appropriate to now
> decide that you want to designate somebody else.

*Id*. at 84:6-18.

37.    Thereafter, PML's California counsel, Bobby Hashemi, who was in attendance as

a corporate representative and not in his capacity as a lawyer, and who is not admitted pro hac

vice in this case, interjected:

> MR. HASHEMI [PML's California counsel]:  I think to the extent that you want—you
> want to ask Dr. J[alal] about the invoices, fine.  But if you're foregoing that opportunity, I
> think that—

---

[12] PML/Dr. Reza testified:

> Q.  Okay.  Where in 3.2 or in Exhibit A does it say ARUP must bill Pacific Medical in conformance with
> appropriate CPT codes in order to ensure that Pacific Medical's ability to obtain reimbursement from Medi-
> Cal was not diminished or reduced?  Where does it say that?
> A.  Oh, I don't see where it says it.
> Q.  It doesn't say that in the contract, does it?
> A.  My answer was it doesn't have to.

*Id.* at 93:11-18.

[13] *Id.* n.11.

MS. MARAGAKIS:  I'm not foregoing anything, Bobby [Hashemi].  I think that we sent out a 30(b)(6) notice a long time ago.  We've been asking who the designees are.

MR. HASHEMI:  Okay.

MS. MARAGAKIS: We didn't get confirmation of that until Monday, and we prepared our questioning based on that.  And so I'm not waiving anything, and I certainly can ask that. . . .—but I think this is PML's testimony.  This is the time and place for PML's testimony.

MR. HASHEMI:  That's fine.  You're taking PML's COO's deposition on Thursday.  So I welcome those questions if that's what you wish to do on Thursday.  But unless-I guess it's not one way or the other.  We can't just exclude the testimony from PML and then seek it from another PML officer.

MS. MARAGAKIS:  Bobby, I think what we're going to do, since Darren [Nelson] is the attorney representing Dr. Zarghami in this deposition, I'm going to let him speak to it.

*Id.* at 85:1-23.

## **Conduct During Zoom Deposition**

38.     During the Zoom deposition, both Dr. Reza and Mr. Hashemi, his California counsel (present only as a corporate representative), were located in the same room in California.

39.     ARUP noticed that during much of the deposition, both Dr. Reza and Mr. Hashemi muted their microphones, including while questions were being asked.  ARUP's counsel requested that, because they were in the same room, they keep their microphones unmuted so she could "hear the environment in the room."  PML resisted that request, citing "feedback," and declined solutions to this problem, including separating Dr. Reza and Mr. Hashemi into separate rooms, or sitting in a way that they could both be seen on one screen.[14]

---

[14] Dr. Reza testified:

MS. MARAGAKIS:  Because we're on Zoom, this is a bit awkward, but let me make the request, Dr. Zarghami and Mr. Hashemi.  Could you not mute your microphone, please, so that we can, you know, hear the environment in the room as well?
THE WITNESS:  I think part of it is we get this echo effect, so—yeah.  Just trying to make it so that—

MS. MARAGAKIS: Okay. Well, then perhaps I can get Bobby [Hashemi] to mute his and you, Dr. Zarghami, to not mute yours at all during the questioning.

. . .

MS. MARAGAKIS: Okay. Dr. Zarghami, can you unmute yourself?

THE WITNESS: Yeah.

MS. MARAGAKIS: There you go. Okay.

THE WITNESS: This will be too annoying if we do it this way. I'm sorry.

MS. MARAGAKIS: Well, I guess part of my concern that it's important like in a deposition to know what the interaction is between—between people. And if I don't have the microphone on, I can't hear if there's—if there are conversations going on off camera. I'm not suggesting that's what's happening, but it's important for me to know that. So let's give it a try, Dr. Zarghami. I don't know if you can move back a bit, or if you want to appear on the same screen, that would be fine too.

THE WITNESS: I think we're going to keep our social distancing here.

. . .

MS. MARAGAKIS: Okay, Dr. Zarghami, let me—so Dr. Zarghami, I do need your microphone unmuted—okay. And I'll ask that you not mute it during the—during this deposition, that you not mute it during the deposition.

Okay. This is an example. I can see that Bobby and Dr. Zarghami are talking, and I can't hear that. I'm not privy to that. That's why it's important for both of you to be unmuted.

THE WITNESS: Okay. I won't be able to continue with this if we're both unmuted because it's going to generate this echo. I don't like hearing myself. If Darren has to say something, it worked fine previously as far as --

MS. MARAGAKIS: Well, Dr. Zarghami, for the record, this is what my concern is. If you want to get into separate rooms so that there's not a feedback loop, if you want to maintain social distance and be on the same camera, I think that's fine. But I need to be able to hear -- see, I need to be able to hear what's happening in that room.

MR. HASHEMI: Are we on the record right now?

MS. MARAGAKIS: Yes.

MR. HASHEMI: Well, we can go off the record and discuss this off the record.

MS. MARAGAKIS: No, I want to stay on the record. I mean, if -- that's my request.

MR. HASHEMI: Okay. That's fine. To the extent if there's feedback, there will be feedback.

. . .

MR. NELSON: He said to the extent there's feedback, there will be feedback. We can see what we can do. Isn't this the way we had it during the first two hours, Elaina?

MS. MARAGAKIS: It was, Darren. It raised concerns there was instances where both of them were muted, and I could see someone's lips moving. And I need to be privy to those conversations. It's probably just very innocent and just guiding him, but I need to be privy to that.

THE WITNESS: I have a tendency to talk. I could be talking to myself, or if I get a phone call, I just don't want to be very disruptive because I have --we're seeing patients at this moment. And I do have things I have to reference, and I do have to do other things. I apologize. I honestly can't do it like this with this feedback.

MR. NELSON: That feedback is pretty -- to the extent if that's -- if he's giving an answer and we hear that in the background, it's not going to be good. Why can't we have Bobby turn off his microphone and -- do you want the witness's microphone on?

MS. MARAGAKIS: That's what I've asked.

MR. NELSON: All right.

MS. MARAGAKIS: Is there a reason that you can't go into separate rooms so --

THE WITNESS: I really don't have like separate rooms for -- for this. So I wouldn't know where to put him. Everywhere else there's somewhere somebody's working. I don't want to put him in his car or --

MS. MARAGAKIS: I'm going to need to get you to keep your microphone unmuted, Dr. Zarghami, or Bobby can sit behind you far away so that you can social distance.

THE WITNESS: There's not far away.

40.    Additionally, Mr. Hashemi's camera was, at times, positioned upward so that only the top portion of his face, but not his mouth, was visible.  When ARUP's counsel requested that he "adjust that camera so I can see better," Mr. Hashemi vehemently resisted that request, stating "I don't think there's any requirement for you to see my face," and stated that the camera angle was a result of his "looking at documents on the laptop."[15]

---

MS. MARAGAKIS:  Look, this is your deposition.  Your counsel of record is here.  Mr. Hashemi is here as a corporate representative.  But I'm entitled to hear what's going on in the background.
THE WITNESS:  Okay.  I mean, if you -- if you hear somebody else that has nothing to do with this, I'm sorry.

2nd PML/R. Zarghami Dep. at 86:5-88:21, Ex. F.

[15] Testimony during Dr. Reza's deposition was as follows:

MS. MARAGAKIS:  Bobby, sorry, I'm seeing a view of the ceiling.  Do you want to adjust that camera so I can see better?  Great.
MR. HASHEMI:  I don't think there's any requirement for you to see my face.
THE WITNESS:  You're muted.
MS. MARAGAKIS:  I can hear him.  Actually, no, if this were a deposition, I would be able to view your face.  And so I think I'm entitled to see the entirety of your face in this.
MR. HASHEMI:  I disagree with you.  And to the extent that you're unable to, it's because I'm looking at documents on the laptop.
MS. MARAGAKIS:  Okay.
MR. HASHEMI:  If you have -- if you think that there's some sort of impropriety going on, please address it.  But this is just sort of an ongoing issue, non-issue, that keeps on being raised.
MS. MARAGAKIS:  Mr. Hashemi, I'm entitled for the record to see the entirety of your face.  And I'll put on the record that I have not been able to see the entirety of your face, specifically your mouth during much of this deposition.  There we go.
MR. HASHEMI:  I will tell you now that's a false representation, and you can see the entirety of my face.
MS. MARAGAKIS:  Now I can.
MR. HASHEMI:  There's no requirement for my face to be visible the entire time.  I don't see Chris Stout's face.  I don't see Clara Murphy's face.  I'm going to turn off my video.  There's no need to see my face.
MS. MARAGAKIS:  Mr. Hashemi, this is a -- this is -- Mr. Stout and Ms. Murphy are not with a deponent.  They're not testifying.
MR. HASHEMI:  How do I know that?
MS. MARAGAKIS:  How do you know they're not testifying?
MR. HASHEMI:  What do I know what they're doing, what they're not saying?  I don't have a right to know.  Neither do you.
MS. MARAGAKIS:  Okay.
MR. HASHEMI:  For the record, I'm sitting here looking at the exhibits that you provided.
MS. MARAGAKIS:  I'm not accusing you, Mr. --
MR. HASHEMI:  You clearly are.  It seems like you clearly are accusing us of something.  Because it seems to me that you not being able to see my mouth the entirety of the time somehow implies impropriety on my behalf, which is a ridiculous claim.
MS. MARAGAKIS:  Well, I'll just -- I'll let the record reflect, for example, right now that the -- I

41.    Prior to the deposition of Dr. Jay Zarghami, ARUP's counsel wrote to PML's

counsel:

> I am also writing to request that both Bobby [Hashemi] and Dr. Jay [Zarghami] keep their
> microphones unmuted at all times, and that they be fully visible on the screen at all
> times.  This is a reasonable request, and I want to give you advance notice to make sure
> that they work through any technical difficulties.  <u>Please ensure they have made
> arrangements to accommodate this request</u>.  If this is going to be a problem, please let me
> know today so I can decide whether to ask the Court for assistance.
>
> I am also providing notice that I intend to have the deposition recorded by video.  It was
> noticed up for that possibility, but I want to make clear that that is how I am planning on
> proceeding.  Please let me know if you have any objections.

Email dated 8/18/21 to D. Nelson from E. Maragakis (emphasis in original), attached as **Exhibit J.**

42.    PML's counsel declined to stipulate, stating "As to the request that California

counsel and the witness be visible at all times with the microphones on, we do not stipulate to the

request."  Email dated 8/18/21 to E. Maragakis from D. Nelson, Ex. J.

43.    As to recording the deposition, PML's counsel responded "I note that in the

Second Amended Notice of Deposition you stated that the deposition may be recorded. Thus, we

do not object to the recording of the deposition and simply note that the costs of such must be

borne by ARUP pursuant to the Federal Rules of Civil Procedure."  Email dated 8/18/21 to E.

Maragakis from D. Nelson, Ex. J.

---

can't -- I can only see from your nose up.
MR. HASHEMI:  That's great.
MS. MARAGAKIS:  Okay.
MR. HASHEMI:  The record will reflect that you also wanted me to sit on Dr. Reza's lap at some point
because you wanted both of us to be on the same screen.  Let's just leave it at that.
MS. MARAGAKIS:  Mr. Hashemi, I've never asked you -- I asked to appear on the same screen to resolve
the problem.  But we'll move on.

*Id.* at 113:5-115:14.

**Hearing Before the Court Regarding Conduct During Zoom Deposition**

44.    Based on PML's refusal to stipulate, ARUP brought this issue to the Court's attention.  Email dated 8/18/21 to J. Oberg from E. Maragakis (D. Nelson cc'd), attached as **Exhibit K.**

45.    On August 19, 2021, at the Court's request, ARUP submitted to the Court an email description of the dispute.  Email dated 8/19/21 to J. Oberg from E. Maragakis (D. Nelson cc'd), Ex. K.  PML did not submit any written statement.

46.    The Court scheduled a Zoom hearing the morning of August 19, 2021, before the deposition.  *See* Minute Entry 8/19/21 (Dkt. #51), attached as **Exhibit L.**

47.    As to ARUP's request that the witness and anyone in the same room as the witness keep their microphones unmuted at all times, and be fully visible on the screen at all times, Mr. Hashemi responded "there is no requirement for me to be pinned to the video and there's no requirement for me to have my mic on," and objected to being "pinned to a camera" because he "take[s] phone calls during depositions at times."  He further asked "that the Court not entertain any request by Ms. Maragakis to force me to be on camera and have my microphone open during the entire period."  Hearing on 8/19/2021.[16]

48.    During the hearing, the Court ruled in favor of ARUP, stating "The court orders that during Zoom depositions, any person in the same room as the deponent be on camera with their microphone unmuted."  Minute Entry (Dkt. #51), Ex. L.

49.    Additionally, although the deposition notice specifically gave notice that it might be recorded, and even though ARUP's counsel gave advance notice via email of her intent to

---

[16] The hearing was not transcribed by a certified reporter.  Therefore, quotations from the hearing are taken from the audio recording.

record the deposition on August 19, 2021, Mr. Hashemi still objected to being recorded, stating "Ms. Maragakis intends to videotape the deposition. I don't consent to being videotaped. I'm not saying this to be difficult but it's just, it's my choice today." Hearing on 8/19/2021.

50.    The Court ruled:

> The cleanest way is to have everybody on camera. So my Order if the deposition proceeds today is that you be on camera, sir. If you do need to make those phone calls, if you do need to take those breaks, then you'll need to ask for a break and go off the record and do so. If you're unwilling to be on camera, then maybe it's time for Ms. Maragakis to pursue an in-person deposition instead or to file a motion with the Court requesting that. Or if things really go poorly in violation of this Order, then I, I'm willing to entertain any motion.

Hearing on 8/19/2021.

51.    Ultimately, during the deposition, Mr. Hashemi appeared on Zoom, after all, used a single microphone that allowed the witness and Mr. Hashemi to be heard without muting the microphone, and consented to being recorded, as he was in the same room as the deponent. Dr. Jalal Dep. at 6:15-7:2, Ex. G.

## ARGUMENT

**A.    PML, Dr. Reza, and Dr. Jalal Should be Sanctioned for its Failure to Appear for its Depositions on August 3 and 5, 2021 After Receiving Proper Notice.**

Sanctions are warranted for PML's, Dr. Reza's, and Dr. Jalal's failure to appear at their scheduled depositions.

Federal Rule of Civil Procedure 37(d)(1)(A)(i) allows the Court to order sanctions if a party fails to appear for a deposition after receiving proper notice. Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), such as "striking pleadings in whole or in part" or even "rendering a default judgment against the disobedient party." Additionally, "the court must

order the disobedient party, the attorney advising that party, or both to pay the reasonable

expenses, including attorney's fees, caused by the failure unless the failure was substantially

justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

There is no question that Dr. Reza, Dr. Jalal, and PML all received proper notice of the

depositions scheduled for August 3, 2021, and August 5, 2021.[17]  (SOF ¶ 5.)  Despite this, Dr.

Reza (individually and on behalf of PML) explained his absence on August 3, 2021, only as the

result of a "miscommunication,"[18] while Dr. Jalal claimed a lack of "knowledge" that his

deposition was scheduled for August 5, 2021.  (SOF ¶ 11.) And, although Dr. Jalal "[did] not

remember" what he was doing on August 5, he confirmed he was in California. *Id.* Further, Dr.

Jalal announced his intention not to appear on Monday, August 2, 2021, but his deposition was

not scheduled until Thursday, August 5, 2021.  Dr. Jalal therefore had plenty of time to

prepare— especially given that he was testifying only in his personal capacity—and has not

explained why he could not have been prepared three days later.  Thus, not only did PML, Dr.

Reza, and Dr. Jalal lack substantial justification for failing to appear, but they seem to have

missed their depositions in bad faith.

This Court has noted "it is no trifling matter for a party to abuse our office by

disappearing and failing to meet our deadlines. The federal courts are not a playground for the

---

[17] PML's counsel agreed to accept service of the subpoenas, even though formal waivers were not filed.

[18] Any "miscommunication" was presumably between PML's attorney and his clients, as ARUP clearly gave notice and PML's attorney was clearly informed and aware of the deposition. *See* Email dated 8/2/2021 to E. Maragakis from D. Nelson, Ex. C.

petulant or absent-minded; our rules and orders exist, in part, to ensure that the administration of justice occurs in a manner that most efficiently utilizes limited judicial resources." *Antonio Galindo v. Utah*, No. 2:17-CV-1302, 2019 WL 2929527, at *4–5 (D. Utah July 8, 2019) (citing *United States ex rel. Jimenez v. Health Net, Inc.*, 400 F.3d 853, 855, 856 (10th Cir. 2005)).

Here, PML obstructed the process of scheduling depositions at every turn, pushing discovery up against the deadline and forcing extensions. Then, once depositions were finally scheduled, PML, Dr. Reza, and Dr. Jalal plainly ignored this Court's rules, failed to set forth any justifiable explanation, and declined to mitigate their conduct. PML, Dr. Reza, and Dr. Jalal should be sanctioned for flouting whatever "miscommunication" led to their absence at three properly noticed depositions. Additionally, PML's refusal to stipulate to the very simple and reasonable request that counsel in the same room as the witness stay on camera and unmute his microphone, led to a hearing before the Court, which further delayed the deposition. The fact that PML ultimately complied with the requested stipulation rendered the hearing totally unnecessary. *Huggins v. Coatesville Area Sch. Dist.*, No. CIV.A. 07-4917, 2009 WL 2973044, at *2 (E.D. Pa. Sept. 16, 2009) (granting motion for sanction in part due to attorney's "childish baiting behavior.")

For these actions, ARUP seeks the reasonable expenses incurred caused by PML's, Dr. Reza's and Dr. J's conduct, including (a) fees and costs incurred in connection with the depositions on August 3 and 5, 2021 (at which they did not appear); and (b) fees and costs incurred in connection with the Court hearing on August 19, 2021.

**B.** **PML and Dr. Reza Should Be Sanctioned for Their Evasive Responses and Obstreperous Conduct.**

Sanctions are also warranted against PML and Dr. Reza for their obstreperous conduct during the deposition.  Federal Rule of Civil Procedure 30(d)(2) provides "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."

PML/Dr. Reza repeatedly impeded and frustrated the deposition by refusing to answer even the most basic questions about PML's own claims.  For example, PML alleges that "ARUP breached its obligation to bill in conformance with appropriate CPT codes for some of the services it provided to Pacific Medical."  First Am. Countercl. ¶ 21.  When ARUP asked the simple question, "Do you have any reason to believe that any of the CPT codes that were ever provided were incorrect?", rather than responding directly, PML/Dr. Reza feigned confusion, engaging in a nearly four-minute back-and-forth in which he stated "you're not being specific enough," or "you're not making any sense," claiming that the question was "vague," or "scenario-based," and asserting that there are "variable ways to answer that."  (SOF ¶ 29.)  *See Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) (sanctions upheld in light of deponent's refusal to answer deposition questions (1) he deemed irrelevant or (2) he pretended to be confused by).

Having frustrated this line of questioning with nonsensical responses, PML finally made clear that it understood the questions all along, ultimately responding to the original question with a simple "yes":

> Q.   I'm asking you whether PML as part of its counterclaim contends that any of the -- that there's any problem with the CPT codes that ARUP put on its invoices?  Is that part of your claim or not?

A.  Yes.

(SOF ¶ 29.)

At other times, PML pretended to not understand the question, or otherwise refused to answer, declaring "It's very straightforward," "I think it speaks for itself," and "there's nothing more than what's already written on there."  (SOF ¶ 34.)

This behavior thwarted the orderly conduct of the deposition, and unnecessarily protracted the deposition.  From the outset, it was clear that PML/Dr. Reza intended to be argumentative and difficult.  When he did not want to answer a question, he acted confused or gave rambling responses that did not address the issue.  Given this conduct, sanctions are warranted.  *See GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 193 (E.D. Pa. 2008) (imposing 30(d)(2) sanctions in part due to party's "evasive and incomplete answers."); *Hassell v. Norfolk S. Ry. Co.*, No. 2:07-CV-13319, 2008 WL 5068605, at *1 (E.D. Mich. Nov. 19, 2008) (awarding sanctions because deponent "was at times evasive and uncooperative with his asserting lack of knowledge on several matters that were not plausible.").

**C.    PML Should Be Sanctioned for Failing to Prepare its 30(b)(6) Designee.**

Additionally, and as a separate and independent basis for sanctions, PML should be sanctioned for failing to properly prepare its Rule 30(b)(6) designee.

"The law is well-settled that corporations have an 'affirmative duty' [under Rule 30(b)(6)] to make available as many persons as necessary to give 'complete, knowledgeable, and binding answers' on the corporation's behalf." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007) (citations omitted).  Further, "Rule 30(b)(6) implicitly requires the designated representative to review all matters known or reasonably available to it in

preparation for the Rule 30(b)(6) deposition." *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999) (sustaining motion for sanctions in part due to inadequate 30(b)(6) designee). "This interpretation is necessary in order to make the deposition a meaningful one and to prevent the sandbagging of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial." *Id.* While courts understand "that preparing for a Rule 30(b)(6) deposition can be burdensome . . . a party does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available." *Id.* "If the designated persons 'do not possess personal knowledge of the matters set out in the deposition notice, the entity is obligated to prepare the designees so that they may give knowledgeable and binding answers for the organization.'" *Id.* (citations omitted). "Producing an unprepared witness is tantamount to a failure to appear at a deposition." *Id.* (citations omitted).

It is hard to imagine a 30(b)(6) designee less prepared than PML's designee, Dr. Reza. From the outset, Dr. Reza admitted that didn't even review the Rule 30(b)(6) notice until the day before the deposition, spent "less than an hour" preparing for the 30(b)(6) deposition, and only "spoke briefly" with his attorneys. (SOF 16.)  When asked whether he had reviewed *any* documents in preparing for the 30(b)(6) deposition, Dr. Zarghami testified, "no."  (*Id.*)[19]  As the deposition proceeded, it became apparent that Dr. Reza could not testify on PML's behalf on even the most central issues in this litigation, which were identified in the Rule 30(b)(6) notice:

- **Fee Schedules.**  PML's Amended Counterclaim alleges that ARUP "breached the parties' agreement by charging rates higher than those provided on the Fee Schedules,"

---

[19] After a break, at the end of the deposition, he changed his testimony and stated that he had, in fact, reviewed some minimal documents.  (SOF ¶ 16.)

Am. Compl. ¶18, and Topics 1, 2, and 3 of the Rule 30(b)(6) notice specifically requested a designee on topics that included the fee schedules.  Despite this, Dr. Reza was not prepared to testify about the fee schedules at all.  (SOF ¶¶ 16-18.)

- **Receipt of Invoices.**  Topic 5 requested a designee on the receipt and payment of invoices, but PML was unprepared to testify about invoices, and instead referred these questions to "Dr. J[alal]."  (SOF ¶¶ 18-21.)

- **Invoices for which ARUP Seeks Payment.**  In its Amended Complaint, ARUP seeks payment of four invoices, and Topic 3 required a designee to testify on the placement of orders, and the payment of invoices.  PML was unprepared to testify about these invoices.  (SOF ¶¶ 22, 23.)

- **CPT Codes.**  PML alleges that ARUP incorrectly used CPT codes, and Topics 1 and 6 requested a designee on that topic.  PML was either unprepared or otherwise refused to testify about CPT codes.  (SOF ¶¶ 24-26.)

Thus, PML has clearly "engaged in sanctionable misconduct by failing to adequately prepare their representative for deposition." *Starlight Int'l Inc.*, 186 F.R.D. at 639; *see also Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) ("When a party fails to comply with Rule 30(b)(6), Rule 37 allows courts to impose various sanctions…").

Also, given PML's bad faith efforts in preparing for the 30(b)(6) deposition, ARUP also asks the Court to sanction PML pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(i)—and direct that "designated facts be taken as established for purposes of the action, as [ARUP] claims." Specially, ARUP seeks a ruling that the following facts must be taken as established for purposes of this action:

31

1.      The Agreement expired on its own terms on or about May 31, 2018.

2.      Exhibit A to the Agreement is a fee schedule that was not based on California Medicaid, or "Medi-Cal," rates;

3.      PML reviewed the invoices sent by ARUP, including reviewing the invoices for errors;

4.      ARUP has fully performed all of its obligations, including having delivered all of the services ("Services") listed on the following invoices:

> Invoice dated November 1, 2019
> Invoice dated December 1, 2019
> Invoice dated January 1, 2020
> Invoice dated February 1, 2020

5.      PML received, knew about, and appreciated the Services, the Services benefitted PML, PML knew and understood that it would need to pay for the Services, and PML agreed to pay ARUP for the Services, but failed to do so.

6.      PML did not conduct an audit of invoices to support its counterclaim damages.

7.      PML was aware of, understood, and agreed to be bound by the following statement on all invoices "The codes reflect our interpretation of CPT coding requirements based on AMA guidelines published annually.  CPT codes are provided only as guidance to assist clients with billing.  ARUP strongly recommends that clients confirm CPT codes with their Medicare administrative contractor, as requirements may differ.  CPT coding is the sole responsibility of the billing party.  ARUP Laboratories assumes no responsibility for billing errors due to reliance on the CPT codes published."

8. The language on the invoices required payment within 30 days, required the payment of interest at 18% per annum for invoices not paid within 30 days, and allowed for collection of attorney fees. Pacific Medical is liable to ARUP in the sum of $180,010.57, plus attorneys' fees and costs, and interest at the rate of 18% from the date of each Invoice (1 ½% per month), which amounts are rightfully due to ARUP.

9. ARUP had no "contractual obligation to bill Pacific Medical in conformance with appropriate CPT codes for all services provided to Pacific Medical in order to ensure that Pacific Medical's ability to obtain reimbursement from Medi-Cal was not diminished or reduced."

10. ARUP had no obligation to set rates in accordance with Medi-Cal or California Medicaid rates.

11. PML was aware of, understood, and agreed to be bound by the following language from the invoices:

> The American Medical Association Current Procedural Terminology (CPT) codes published in ARUP Laboratory Test Directory are provided for informational purposes only. "The codes reflect our interpretation of CPT coding requirements based on AMA guidelines published annually. CPT codes are provided only as guidance to assist clients with billing. ARUP strongly recommends that clients confirm CPT codes with their Medicare administrative contractor, as requirements may differ. CPT coding is the sole responsibility of the billing party. ARUP Laboratories assumes no responsibility for billing errors due to reliance on the CPT codes published.

12. Any dispute by PML about charges on the invoices were required to have been brought within 30 days, as stated in the invoices: "All claims, requests for adjustments, or notification of errors must be made within 30 days of the invoice date or charges are considered accepted."

13.     PML failed to timely raise any claim, request for adjustment, notification of errors, or dispute as to any of the charges for which it claims damages in its Amended Counterclaim.

## **CONCLUSION**

Based on the foregoing, ARUP respectfully requests that the Court should enter sanctions as detailed above.  ARUP will file an Affidavit of Attorneys' Fees supporting that award if the Court grants this requested relief.

## **MEET AND CONFER CERTIFICATION**

As detailed more fully above, ARUP certifies that it attempted to confer in good faith with opposing counsel to prevent and/or remedy the conduct described above, both in writing and over the phone prior to the depositions, as well as during the depositions, in efforts to resolve these disputes without Court intervention.

DATED:  October 25, 2021.

RAY QUINNEY & NEBEKER P.C.

*/s/  Elaina M. Maragakis*
Michael D. Mayfield
Elaina M. Maragakis

*Attorneys for ARUP Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of October, 2021, a true and correct copy of the

foregoing **ARUP MOTION FOR SANCTIONS** was sent via Email to the following:

Darren K. Nelson
10244 Mystic Spring Way
South Jordan, Utah 84095
dknelsonlaw@gmail.com


*/s/Melanie Martin*

1577277