THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ARUP LABORATORIES, INC., a Utah corporation,<br><br>    Plaintiff,<br><br>v.<br><br>PACIFIC MEDICAL LABORATORY, INC., a California corporation,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [104] MOTION TO STRIKE AND GRANTING IN PART AND DENYING IN PART [72] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-00186<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

This case arises from a contractual dispute regarding the pricing of reference laboratory services. Plaintiff ARUP Laboratories, Inc. (ARUP), asserts that Defendant Pacific Medical Laboratory, Inc. (PML), has failed to pay four invoices for lab services it has rendered.[1] PML denies ARUP's claims and has raised several counterclaims asserting, among other things, that ARUP has repeatedly overcharged it for the services rendered.[2]

ARUP has now moved for summary judgment on all of its claims and most of PML's counterclaims.[3] PML has filed a response opposing the motion,[4] and ARUP has replied.[5] ARUP has also filed a motion to strike two exhibits PML submitted with its response to ARUP's motion

---

[1] *See generally* Amended Complaint, ECF No. 38, filed December 17, 2020.

[2] *See generally* Amended Counterclaim, ECF No. 30, filed August 4, 2020.

[3] *See* Motion for Summary Judgment, ECF No. 72, filed February 7, 2022.

[4] *See* ECF No. 87.

[5] *See* ECF No. 103.

for summary judgment.[6] PML has filed a response opposing that motion,[7] and ARUP has replied.[8] Having reviewed the briefing for both motions and relevant case law, the court concludes that oral argument is not necessary to resolve them.[9] For the reasons that follow, ARUP's motion to strike is GRANTED and its motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

ARUP is a Utah-based nonprofit and academic reference laboratory that provides laboratory tests and services to clients across the country.[10] PML is a full-service clinical laboratory that conducts tests for clinical practitioners.[11] On April 1, 2014, ARUP began providing laboratory services for PML subject to a one-year agreement (the Agreement).[12] ARUP and PML subsequently amended the Agreement to extend its term until May 31, 2018, leaving all other provisions of the Agreement the same.[13] However, May 31, 2018, came and passed without any further discussion between ARUP and PML about amending, extending, or renewing the Agreement.[14]

---

[6] *See* ECF No. 104.

[7] *See* ECF No. 109.

[8] *See* ECF No. 111.

[9] *See* DUCivR 7-1(g).

[10] ECF No. 75 at 1, ¶ 3. These facts are undisputed unless otherwise acknowledged.

[11] *Id.* ¶ 4.

[12] *Id.* ¶ 5.

[13] *Id.* at 1–2, ¶¶ 6–7; Exh. 4, ECF No. 73-4. The parties have numbered all exhibits submitted with the briefs for this motion from 1 to 21. The court will refer to the exhibits by these numbers, with ECF numbers being provided for initial citations.

[14] ECF No. 75 at 2, ¶ 7.

Despite that, PML continued to order services from ARUP, and ARUP continued to bill and obtain payments from PML for the services provided.[15] However, in October 2019, ARUP sent a letter to PML asserting that PML had been purchasing ARUP's services without an agreement in place and asking PML to sign a new agreement.[16] PML declined to sign a new agreement because it believed the parties' Agreement was still in effect and because the new prices ARUP wished to charge were too high.[17] PML subsequently began disputing what it had been charged over the course of the parties' business relationship and refused to pay ARUP's invoices.[18] On January 16, 2022, ARUP sent a letter to PML noting the amounts due and purportedly terminating the Agreement.[19] In all, PML has refused to pay four invoices.[20]

On February 14, 2020, ARUP commenced an action against PML in Utah's Third Judicial District Court, asserting breach of contract, claim on account, and unjust enrichment.[21] PML removed the action to this court soon thereafter and asserted counterclaims.[22] PML amended its counterclaims on August 4, 2020,[23] and ARUP amended its complaint on December 17, 2020.[24] ARUP moved for summary judgment on February 7, 2022.[25]

---

[15] ECF No. 87 at 6, 19.

[16] Exh. 17, ECF No. 90-5.

[17] ECF No. 87 at 6, 20.

[18] *Id.* at 7–8.

[19] Exh. 19 at 1–2, ECF No. 90-7.

[20] ECF No. 75 at 2–3, ¶ 10.

[21] *Id.* at 1, ¶ 1.

[22] ECF Nos. 4, 12.

[23] ECF No. 30.

[24] ECF No. 38.

[25] ECF No. 72.

## STANDARD

A party is entitled to summary judgment only if it is able to show there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[26] Material facts are ones that "might affect the outcome of the suit under the governing law."[27] And a dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[28]

## DISCUSSION

ARUP has asserted two alternative grounds for relief in this action: breach of contract and unjust enrichment.[29] In response, PML has asserted five counterclaims: two for breach of contract, and one each for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and declaratory relief.[30] ARUP moves for summary judgment on both of its claims and most of PML's counterclaims.

### I.     ARUP's Evidentiary Objections

Before reaching the substance of ARUP's motion for summary judgment, the court must first address ARUP's motion to strike.[31] ARUP argues that two exhibits submitted in support of PML's opposition (Exhibits 20 and 21), and the damages claims derived therefrom, should be

---

[26] Fed. R. Civ. P. 56(a).

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[28] *Id.*

[29] *See* ECF No. 38 at 2–6. In its complaint, ARUP also asserts a claim of "Claim on Account / Services Provided," but it has provided no grounds for distinguishing that claim from its breach of contract claim in the complaint or its motion for summary judgment.

[30] ECF No. 30 at 8–12.

[31] The Tenth Circuit has long held that although evidence submitted in support of a motion for summary judgment need not necessarily be in a form that is admissible at trial, the content or substance of that evidence must comport with the Federal Rules of Evidence. *See Friends of Animals v. Bernhardt*, 15 F.4th 1254, 1272 (10th Cir. 2021); *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995).

stricken for two reasons.[32] First, ARUP argues that this evidence should be stricken under Federal Rule of Civil Procedure 37(c) because PML failed to satisfy Rule 26's disclosure requirements regarding damages, and PML's failure was not harmless or substantially justified.[33] Second, ARUP argues that even if striking the evidence under Rule 37(c) is unwarranted, the evidence is inadmissible because it has not been properly authenticated.[34]

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[35] Under Rule 26(a), a party must provide in their initial disclosures, among other things, "a computation of each category of damages claimed" and "the documents or other evidentiary material . . . on which each computation is based."[36]

In its initial disclosures, PML stated the following:

> Pacific Medical is seeking as damages: (1) amounts ARUP charged to and collected from Pacific Medical in excess of the amounts agreed upon by the parties and (2) amounts for which Pacific Medical was unable to obtain reimbursement as a result of ARUP's billing for services in a manner that did not comply with appropriate CPT coding for such services. The total amount of such damages is still being calculated, but is presently believed to be in excess of $226,704.03—not counting interest, attorneys' fees, and costs. The documents or other evidentiary material, unless privileged or protected from disclosure, on which this computation is based is available for inspection and copying as under Rule 34.

---

[32] ECF No. 104 at 3–7.

[33] *Id.*

[34] *Id.* at 7.

[35] Fed. R. Civ. P. 37(c).

[36] Fed. R. Civ. P. 26(a)(1)(A)(iii).

Now, in opposing ARUP's motion for summary judgment, PML presents two alternative damages computations based on two alternative theories as to how ARUP charged PML "in excess of the amounts [they] agreed upon."

First, PML claims that it suffered $579,383 in damages because the Agreement required ARUP's prices to match or fall below reimbursement rates set by Medi-Cal, California's Medicaid health care program.[37] To support this calculation, PML has provided Exhibit 20, which appears to calculate, on a month-to-month basis and in total, how much PML would have paid for ARUP's services had ARUP priced its services at Medi-Cal's reimbursement rates.[38]

In the alternative, PML claims that it suffered $11,154 in damages because ARUP charged prices for some services that were higher than prices listed in the fee schedules it provided to PML from time to time.[39] To support this calculation, PML has provided Exhibit 21, which appears to calculate, on a month-to-month basis and in total, how much PML would have paid for ARUP's services had ARUP's prices matched those in the fee schedules then in place.[40]

Although ARUP has identified various factors that suggest PML failed to satisfy its disclosure obligations under Rule 26(a) or (e) with regard to the damages it seeks,[41] there is no

---

[37] *See* ECF No. 87 at 28. PML originally presented a different number in its opposition but changed it $579,383 through a subsequent notice of errata. *See* ECF No. 102.

[38] *See* ECF No. 87 at 28; *see also* Exh. 20, ECF No. 90-8.

[39] *See* ECF Nos. 87 at 29; 102 at 2.

[40] *See* ECF No. 87 at 29; *see also* Exh. 21, ECF No. 90-9.

[41] For instance, PML's initial disclosures do not mention Medi-Cal reimbursement rates or identify or provide the source from which Medi-Cal reimbursement rates would be drawn for any damages computation. *See* Exh. 7 at 4–6. Additionally, although PML disclosed its primary damages theory (breach of contract), it did not supplement its Rule 26 disclosures once it completed more precise damages calculations based on specific, alternative breach theories (its Medi-Cal and fee-schedule breach theories).

need to address them at length because any such failure by PML was ultimately harmless under the factors the court must consider in such circumstances.[42]

PML's disclosure shortcomings appear to have caused little if any prejudice or surprise to ARUP.[43] Although Exhibits 20 and 21 and the damages claims PML derived from them are undoubtedly new, the theories on which those claims are based are not. PML has asserted since its original counterclaims, which were filed before PML made its initial disclosures, that the Agreement set the prices for ARUP's services at Medi-Cal reimbursement rates and that the prices ARUP charged for some services exceeded those listed in its fee schedules.[44] Additionally, the information provided by Exhibits 20 and 21 is not truly new, as they were allegedly derived from documents and records to which ARUP has always had access, such as its invoices and fee schedules.[45] The only resource PML appeared to use, but did not disclose in initial or supplemental disclosures, was its source for month-to-month Medi-Cal reimbursement rates used in creating Exhibit 20. However, those rates have always been publicly available through Medi-Cal's website.[46] And while that alone is not an excuse to disregard Rule 26's requirements, the fact remains that PML did identify and produce "California Medi-Cal Reimbursement Rates"[47] as "[e]vidence that supports [its] Counterclaim for damages" in

---

[42] When determining whether a Rule 26 violation was harmless, the court must consider the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[43] *See id.*

[44] ECF Nos. 12 at 11; 30 at 4.

[45] *See* ECF No. 110 at 7.

[46] *See Trove Brands, LLC v. Hut Grp. Ltd.*, No. 2:20-CV-00803, 2022 WL 2835470, at *2 (D. Utah July 20, 2022) (finding that any prejudice or surprise resulting from a party's failure to timely disclose pages from publicly available websites was "minimal").

[47] ARUP notes that the website link PML provided in its answer to interrogatories—www.Medi-Cal.gov—does not work or provide access to Medi-Cal's reimbursement rates. ECF No. 111 at 6 n.4. While there is no evidence as to whether this was intentional or an oversight, the fact remains that PML intended to identify the source of its Medi-

response to an interrogatory from ARUP only two months after failing to do so in its initial disclosures.[48] Finally, perhaps the clearest indication that ARUP has suffered no undue prejudice or surprise due to PML's disclosure failings is the fact that ARUP knew enough about both of the breach theories underlying PML's new damages claims to address them in its motion for summary judgment.[49]

The factors of whether PML is able to cure any prejudice it has caused, and the extent to which its new damages claims and exhibits would disrupt trial, also weigh in favor of finding PML's disclosure shortcomings harmless.[50] The new damages claims are derived from Exhibits 20 and 21, and Exhibits 20 and 21 are derived from evidentiary sources to which ARUP has long had access. Thus, the real issue is not whether further discovery into the exhibits is necessary, as ARUP contends, but whether the exhibits, as derivatives of evidence produced during discovery, would be admissible at trial.[51] That, combined with the fact that no trial date has yet been set, also means that PML's new damages claims and exhibits would not cause any trial disruptions.

Finally, although PML has not provided a specific calculation of damages for any of its theories until now,[52] its apparent reluctance does not necessarily appear to be out of bad faith or gamesmanship.[53] PML apparently did not definitively calculate and produce its damages claims

---

Cal reimbursement rates, Medi-Cal's website. Further, ARUP does address the fact that it appears that PML produced the reimbursement rates it had used on documents "PML006687 through PML007353." *See* Exh. 8 at 6.

[48] Exh. 8 at 4–6.

[49] Indeed, yet another reason declining to strike Exhibit 20 and damage calculations based thereon is not prejudicial to ARUP is the fact that, as will be discussed in more detail below, the court agrees with its argument that it did not breach the parties' Agreement by charging above Medi-Cal's reimbursement rates.

[50] *See Woodworker's Supply*, 170 F.3d at 993.

[51] *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) ("[W]hile . . . the *form* of evidence produced by a nonmoving party at summary judgment may not need to be admissible at trial, 'the *content* or *substance* of the evidence must be admissible.'" (quoting *Thomas*, 48 F.3d at 485)).

[52] ECF Nos. 75 at 18 n.11; 104 at 2–3.

[53] *See Woodworker's Supply*, 170 F.3d at 993.

until now because of the sheer amount of work required to do so.[54] Although this is no excuse for failing to comply with Rule 26, it suggests PML's failures may have been the result of negligence, not bad faith. But even if PML's actions suggested bad faith to some degree, these concerns on this record remain outweighed by the fact that PML's actions have not caused any material prejudice, surprise, or disruptions to trial.

Of course, the fact that the court finds any Rule 26 violation by PML to be harmless does not end the analysis. ARUP has also argued that Exhibits 20 and 21, and the damages claims derived from them, should be disregarded because they are inadmissible.[55] PML disagrees, arguing that the exhibits are "illustrative aids" and admissible as summaries of other evidence under Federal Rule of Evidence 1006.[56] The court must resolve this dispute before it may consider Exhibits 20 and 21 in ruling on ARUP's motion for summary judgment.[57] Because the exhibits have been produced to support PML's opposition to ARUP's motion for summary judgment, PML bears the burden of proving their admissibility.[58]

In arguing that its exhibits are admissible as "illustrative" exhibits under Rule 1006, PML overlooks the fact that illustrative exhibits are not necessarily the same as Rule 1006 summaries. Rule 1006 provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in

---

[54] *See* ECF Nos. 87 at 15; 104 at 5.

[55] ECF No. 104 at 7.

[56] ECF No. 110 at 10.

[57] *See Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.").

[58] *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) (noting that the plaintiffs, as the parties seeking the admission of evidence in opposition to a motion for summary judgment, "bore the burden of proof to show its admissibility").

court."[59] In contrast, illustrative or demonstrative exhibits are not used to prove the content of other records but to reduce and present the content of other admitted records into a more "concise" or "simpler form."[60] Thus, although a Rule 1006 summary is technically illustrative of what other records contain, illustrative exhibits fall within a separate evidentiary category.

Although Exhibits 20 and 21 purportedly include calculations that draw data from voluminous records, they are not being provided to prove, and indeed cannot prove, the content of those records. That is, although the exhibits contain calculations of what PML would have paid had ARUP properly charged PML in accordance with Medi-Cal reimbursement rates and/or its own fee schedules, those calculations do not constitute a summary that could prove the content of the voluminous invoices, fee schedules, and Medi-Cal reimbursement rate tables allegedly used to complete them. Thus, Exhibits 20 and 21 are not admissible as summaries under Rule 1006.

This means that if Exhibits 20 and 21 are admissible, it must be as illustrative exhibits showing how much PML should have been charged by ARUP under its alternative breach theories for purposes of demonstrating damages. The exhibits can be admitted for this purpose as long as they (1) "fairly and accurately summarize[] previously admitted competent evidence" and (2) their probative value is not substantially outweighed by any danger of unfair prejudice, confusion, or propensity to mislead their admission would cause.[61]

Based on the current record, PML has not met its burden of showing that its exhibits' portrayal of other admitted (or at least admissible) evidentiary materials is fair and accurate.

---

[59] Fed. R. Evid. 1006.

[60] *See United States v. Downen*, 496 F.2d 314, 321 (10th Cir. 1974).

[61] *Dahlberg v. MCT Transp., LLC*, 571 Fed. App'x 641, 647 (10th Cir. 2014) (unpublished) (quoting *Wilson v. United States*, 350 F.2d 901, 907 (10th Cir. 1965)); *see also* Fed. R. Evid. 403.

Although the record contains evidence as to the number of lab services PML ordered from ARUP month-to-month and in total,[62] PML has not provided any of the Medi-Cal reimbursement tables or fee schedules which were used to make the calculations in Exhibits 20 and 21. PML essentially asks the court to find that its use and portrayal of data from those materials through the calculations in the exhibits is fair and accurate based on its word alone. That is simply not enough. The court has a duty to view all evidence in a light most favorable to PML as the non-moving party, but that duty does not extend to accepting bare assertions about the content of evidence that could have been, but was not, submitted into the record.[63] PML has simply failed to provide any basis for the court to find that Exhibits 20 and 21 fairly and accurately represent the contents of evidence not before the court.

In summary, although the court finds no need to strike Exhibits 20 and 21 as a sanction under Rule 37(c), PML has failed to satisfy its burden of establishing their admissibility. Therefore, ARUP's motion to strike must be granted, and the court will not consider the exhibits in ruling on ARUP's motion for summary judgment.[64]

## II.    ARUP is Not Entitled to Summary Judgment on Its Breach of Contract and Unjust Enrichment Claims.

The court now turns to ARUP's motion for summary judgment on its own claims. In asserting breach of contract and unjust enrichment, ARUP asserts not only alternative theories for obtaining relief, but mutually exclusive ones. To prove breach of contract under Utah law,[65] a

---

[62] *See* Exhibit 11, ECF No. 75-8.

[63] *Stewart v. Thomas*, 176 F.3d 489, at *2 (10th Cir. 1999) (unpublished) ("Although the court considers all evidence in a light most favorable to the nonmoving party [on a motion for summary judgment], the nonmoving party may not rely on unsupported, conclusory allegations.").

[64] *See Beyene*, 854 F.2d at 1181.

[65] The contract at issue states that it "shall be construed, and the rights and liabilities of the parties hereto determined, in accordance with the internal laws of the State of Utah." Exh. 2, ECF No. 75-2 at 4.

party must show first and foremost the existence of an enforceable contract.[66] The questions of whether that party performed its duties under the contract, whether the other party has breached the contract, and whether the breach caused damages then follow.[67] Unjust enrichment claims, on the other hand, are available only in "the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue."[68] When that is the case, a party can establish unjust enrichment by showing that another party "(1) received a benefit, (2) appreciated or had knowledge of this benefit, and (3) retained the benefit 'under circumstances that would make it unjust for [that party]' to do so."[69]

Based on the undisputed facts of record, ARUP's motion for summary judgment must be denied as to both of its claims because there are genuine questions of fact as to whether a contract existed between the parties when ARUP provided the services in question. The Agreement was set to expire on May 31, 2018, but the parties disagree as to whether it did.[70] Although ARUP is willing to concede to PML's position that the Agreement extended beyond that date for purposes of this motion only,[71] that does not provide grounds from which the court can conclude, as a matter of law, that a contract existed when ARUP provided the services at issue. It is undisputed that the parties did not expressly extend the Agreement like they did after

---

[66] *Am. W. Bank Members, L.C. v. State of Utah*, 342 P.3d 224, 230–31 (Utah 2014).

[67] *Id.*

[68] *Ashby v. Ashby*, 227 P.3d 246, 250 (Utah 2010) (noting that the absence of such contract is "a prerequisite for recovery on an unjust enrichment theory"); *see also Davies v. Olson*, 746 P.2d 264, 268 (Utah Ct. App. 1987) ("Recovery under [unjust enrichment] presupposes that no enforceable written or oral contract exists."). Evaluating ARUP's unjust enrichment claim under Utah law appears most appropriate. Neither party argues to the contrary, and Utah is "the place where the act conferring the benefit or enrichment was done." *See* Restatement (Second) of Conflict of Laws § 221 (1971).

[69] *Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1012 (Utah 2015).

[70] *See* ECF Nos. 75 at 2, ¶ 8, 13 n.9; 87 at 6.

[71] ECF No. 75 at 13 & n.9.

its initial term. And while there are facts in the record from which the trier of fact may be able to find that the Agreement was indeed extended or renewed,[72] ARUP has not attempted to explain how a contract that was set to expire in May 2018 continued to govern the parties' relationship with regard to services ARUP provided in 2019 and 2020.

In summary, ARUP can recover for breach of contract only if there was a contract between the parties, and it can recover for unjust enrichment only if there was not. Because ARUP has provided no basis from which the court can conclude, as a matter of law, whether or not a contract existed between the parties in 2019 and 2020, ARUP is not entitled to summary judgment on its claims, and its motion must be denied.

---

[72] The fact that PML continued to seek laboratory services, and ARUP continued to provide them, after the Agreement's expiration date could be construed as an implied extension or renewal. Although the Agreement specified that all *amendments* "must be in writing and signed by both parties," it allowed renewals "by mutual agreement of the parties." *See* Exh. 2 at 1, 8. Nothing in the agreement appears to preclude the parties from reaching a "mutual agreement" about renewal by their conduct alone. When parties to a contract continue to perform after its expiration as if it were still in effect, some jurisdictions find that "the parties' relationship is generally governed by a new, implied-in-fact contract that incorporates the terms of the expired contract." *Seven Resorts, Inc. v. United States*, 112 Fed. Cl. 745, 780 (2013) (citing case law from various jurisdictions). Although Utah courts do not appear to have addressed this situation specifically, they do recognize implied-in-fact contracts. *See, e.g.*, *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991) (addressing implied-in-fact contracts in the employment context); *see also Jones*, 355 P.3d at 1012 ("Quantum meruit has two distinct branches—contracts implied in law[, otherwise known as unjust enrichment,] and contracts implied in fact."). Although implied-in-fact contracts are established by conduct rather than verbally, they nonetheless require the same elements of formation as an express contract, including "a meeting of the minds." *Jones*, 355 P.3d at 1012; *see also Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996) ("An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" (quoting *Baltimore & Ohio R. Co. v. United States*, 261 U.S. 592, 597 (1923))).

Utah law considers an implied-in-fact contract to be a unilateral contract, a contract in which a promisor's offer is accepted, and the promisor becomes bound, when the party to whom the offer was made performs a specified act rather than making a binding promise in return. *See Tomlinson v. NCR Corp.*, 345 P.3d 523, 527 (Utah 2014); *Wayment v. Schneider Auto. Grp. LLC*, 438 P.3d 1005, 1008 (Utah Ct. App. 2019). Thus, "for an implied-in-fact contract term to exist, it must meet the requirements for an offer of a unilateral contract," meaning that "[t]here must be a manifestation of the [promisor's] intent that is communicated to the [promisee] and sufficiently definite to operate as a contract provision." *Johnson*, 818 P.2d at 1002.

Because the existence of an implied-in-fact contract "is a question of fact that turns on the objective manifestations of the parties' intent," it is generally an issue for the trier of fact. *Tomlinson*, 345 P.3d at 527. However, courts may find an implied-in-fact contract if "the evidence relied on by the parties presents no triable issues of fact" and no reasonable trier of fact could find that such a contract did not exist. *Id.* Because ARUP has not explained the legal and factual basis for the existence of a contract between itself and PML during the time in question, the court has no basis for making a finding as a matter of law.

III.     **PML's Counterclaims**

Next, ARUP moves for summary judgment on PML's counterclaims. Although ARUP's motion does not necessarily explain why it is entitled to summary judgment on PML's counterclaims with particularity other than challenges based on perceived damages inadequacies, it clearly challenges some of the allegations and evidence at the heart of PML's breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment counterclaims.[73] The court will begin with whether ARUP has shown entitlement to summary judgment on PML's breach counterclaims.

### A.  Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Counterclaims.

PML's first three counterclaims are for breach of contract and breach of the implied covenant of good faith and fair dealing.[74] As discussed above, a party can recover for breach of contract under Utah law when there is "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages" caused by that breach.[75] Because every contract under Utah law includes an implied covenant of good faith and fair dealing, a party can also recover for breach of that covenant when one party to the contract has acted in a way that is inconsistent "with the agreed common purpose and justified expectations of the other party," denying that party the benefits of the contract.[76]

---

[73] ARUP raises no arguments as to PML's fifth counterclaim, which seeks a declaratory judgment stating that the Agreement remains in effect, and ARUP's attempts to terminate it were invalid. *See* ECF No. 30 at 12. Therefore, ARUP's motion for summary judgment is denied to the extent it seeks summary judgment on that counterclaim as well.

[74] ECF No. 30 at 8–11.

[75] *Am. W. Bank Members, L.C.*, 342 P.3d at 230–31 (quoting *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388 (Utah 2001)).

[76] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199–200 (Utah 1991) ("In this state, a covenant of good faith and fair dealing inheres in most, if not all, contractual relationships.").

PML asserts that ARUP breached the Agreement and its implied covenant of good faith and fair dealing in the following ways: (1) ARUP overcharged PML for the services it provided; (2) ARUP failed to use proper Current Procedural Terminology (CPT) codes when billing for its services; (3) ARUP improperly increased its prices over its course of dealings with PML; and (4) ARUP wrongfully terminated the parties' services agreement in 2020.[77]

In its motion for summary judgment, ARUP raises no argument as to the latter two breach theories. Accordingly, ARUP's motion for summary judgment on PML's breach of contract and good faith and fair dealing claims must be denied as to those theories. However, ARUP does challenge the first two theories, arguing that it did not overcharge PML or bill CPT codes improperly.[78]

### 1. PML has Failed to Show the Presence of a Genuine Dispute as to Whether ARUP Overcharged for its Services.

PML claims that ARUP breached the Agreement and its implied covenant of good faith and fair dealing by overcharging for its services in one of two ways, both of which have already been mentioned. First and foremost, PML claims that ARUP's prices exceeded Medi-Cal's reimbursement rates, even though the Agreement required ARUP's pricing to match those rates.[79] Second, PML claims that even if the Agreement did not require ARUP's prices to match Medi-Cal's reimbursement rates, the prices ARUP charged for some of its services exceeded those listed on the fee schedules ARUP provided to PML from time to time.[80]

---

[77] *See* ECF No. 30 at 8–11.

[78] ECF No. 75 at 14–17.

[79] ECF No. 30 at 4, ¶¶ 14–15.

[80] *Id.* at 9.

To determine whether these breach theories survive summary judgment, the court must begin with construing the contract allegedly breached. Under Utah law, "[t]he underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties" who created it.[81] To ascertain the parties' intentions, the court must begin with "the writing itself . . . consider[ing] each contract provision . . . in relation to all others, with a view toward giving effect to all and ignoring none."[82] "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[83] However, if contractual language is ambiguous, the parties' true intentions must be determined by looking to extrinsic evidence, such as "the parties' actions and performance."[84] In such circumstances, a contract may be interpreted as a matter of law only when the extrinsic evidence being considered is undisputed and leaves no genuine issues of fact about what the parties intended to be resolved.[85]

With regard to PML's theory that ARUP committed a breach by charging prices exceeding Medi-Cal's reimbursement rates, the parties' dispute centers on the phrases "California Reimbursement-based Pricing" and "California Reimbursement-based Fees" in the Agreement's "Pricing" section.[86]

---

[81] *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1144 (Utah 2002).

[82] *Id.* (second omission in original) (quoting *Jones v. ERA Brokers Consol.*, 6 P.3d 1129, 1131 (Utah 2000)).

[83] *Id.* at 1145 (quoting *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 605 (Utah 2002)).

[84] *Id.*

[85] *Peterson v. Sunrider Corp.*, 48 P.3d 918, 927 (Utah 2002); *see also Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.*, 899 P.2d 766, 770 (Utah 1995) ("If a contract is ambiguous and the case was decided on summary judgment, that decision will be upheld only if the undisputed extrinsic evidence regarding the intent of the parties shows that the successful position is correct as a matter of law.").

[86] *See* Exh. 2 at 1.

3.2.    <u>California Reimbursement-based Pricing</u>. PML will be priced in accordance with the terms, conditions, and pricing set forth in this section. Such pricing has been provided in Exhibit A, California Reimbursement-based Fees.

PML argues that these phrases show that the parties intended ARUP's services to be priced at Medi-Cal reimbursement rates.[87] In support of this contention, PML cites testimony from Drs. Reza and Jalal Zarghami—President and Chief Operating Officer of PML, respectively—who testified that PML would not have signed the Agreement if ARUP's prices exceeded Medi-Cal reimbursement rates.[88] PML also cites a 2019 email it received from Barry Beck, an account executive with ARUP, in which he stated in response to pricing questions from PML, "If I'm not mistaken, our agreement is for reimbursement based (MediCal) fees (with some carve-outs)."[89] PML also asserts that a limited review of the fee schedule set forth in the Agreement's "Exhibit A, California Reimbursement-based Fees" supported its belief that ARUP's prices matched Medi-Cal's reimbursement rates.[90]

In contrast, ARUP argues that the Agreement's use of "California Reimbursement-based Pricing" and "California Reimbursement-based Fees" was not a reference to Medi-Cal reimbursement rates in any way.[91] ARUP notes that the Agreement's "California Reimbursement-based Pricing" subsection specifically states that the pricing set forth in "Exhibit A" of the Agreement "w[ould] be uniformly set based on the sum of ARUP's established prices for each CPT code."[92] According to ARUP, this language unambiguously shows that the parties

---

[87] ECF No. 87 at 25–26.

[88] *See* Exh. 13 at 33:8–34:24, 39:1–41:10, ECF No. 90-1; Exh. 14 at 27:12–28:24, ECF No. 90-2.

[89] *See* Exh. 15, ECF No. 90-3.

[90] *See* Exh. 13 at 40:1–41:10.

[91] ECF No. 75 at 15–16.

[92] *Id.*

intended for pricing to be based on "ARUP's established prices," not Medi-Cal reimbursement rates.[93]

Despite PML's arguments to the contrary, the court finds no ambiguity in the Agreement's provisions regarding the pricing of ARUP's services. Subsection 3.2 of the Agreement states, "PML will be priced in accordance with the terms, conditions, and pricing as set forth in this section."[94] The Agreement then states in subsection 3.2.1 that, minus a few exceptions, "prices for laboratory tests referred by PML to ARUP will be uniformly set based on the sum of ARUP's established prices for each CPT code."[95] All subsequent references to pricing or fees in the Agreement use similar language. Subsection 3.2.2 states, "To receive and retain access to *ARUP's CPT Code-Based Fee Schedule*, PML must maintain compliance with the requirements as set forth in this section.[96] Subsection 3.2.2.3 states, "PML's total monthly spend with ARUP, *as calculated on the CPT Code-based fee schedule*, should be substantially consistent with . . . the total monthly spend as calculated using a standard ARUP wholesale fee schedule."[97] And Subsection 3.2.2.5 states, "due to the nature of *this CPT Code-based fee Schedule*, individual test prices may change in conjunction with CPT changes."[98] What's more, Subsection 3.2.3 of the Agreement, which gave ARUP "the right to adjust the pricing offered to PML under certain conditions," says nothing about price adjustments being tied to Medi-Cal reimbursement rates.[99] Nothing in these provisions indicates that the parties intended ARUP to

---

[93] *Id.*

[94] Exh. 2 at 1.

[95] *Id.*

[96] *Id.* at 2 (emphasis added).

[97] *Id.* (emphasis added).

[98] *Id.* (emphasis added).

[99] Exh. 2 at 2.

price its services at Medi-Cal reimbursement rates or even take those rates into account when setting prices.

According to PML, the fact that subsection 3.2.1 falls within the larger subsection titled "California Reimbursement-based Pricing" clearly supports its contention that the parties intended prices to be "California Reimbursement-based," i.e., based on Medi-Cal's reimbursement rates. At the very least, PML argues, this shows that whether the parties intended ARUP to charge no more than Medi-Cal reimbursement rates is genuinely disputed.[100]

However, this interpretation of the Agreement is untenable and does not render its provisions regarding pricing ambiguous.[101] PML overlooks the fact that the Agreement itself states in subsection 20.1 that its section headings are "descriptive," "inserted for convenience only," and "shall not control *or affect the meaning or construction of any provision*" in the Agreement.[102] Thus, the subsection title "California Reimbursement-based Pricing" has no effect on the subsequent provisions stating that prices would be set "based on the sum of ARUP's established prices for each CPT code."

The fact that the fee schedule purportedly attached to the Agreement or later supplied as "Exhibit A" was titled "California Reimbursement-based Fees" also provides no support to PML's proposed construction of the Agreement.[103] The Agreement states that Exhibit A

---

[100] ECF No. 87 at 26.

[101] *See Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990) ("[A] contract provision is not necessarily ambiguous just because one party gives that provision a different meaning than another party does. To demonstrate ambiguity, the contrary positions of the parties must each be tenable." (citation omitted)).

[102] Exh. 2 at 7 (emphasis added).

[103] The Agreement states that its "pricing has been provided in Exhibit A, California Reimbursement-based Fees." Exh. 2 at 1. However, it is unclear from the present record whether Exhibit A was attached to the Agreement at the time it was signed. *See* Exh. 13 at 33:8–35:16, 38:2–39:25. Additionally, no copy of Exhibit A has been provided to the court.

contained "pricing as set forth in" subsection 3.2.[104] And, as already noted, subsection 3.2.1

provides that pricing would be based on "ARUP's established prices for each CPT code."[105]

Although it remains unclear why the parties titled an exhibit listing prices compiled through this

method as "California Reimbursement-based Fees," the fact that they did so does not render the

Agreement's provisions outlining that method ambiguous. In other words, the fact that the

exhibit was apparently titled "California Reimbursement-based Fees" does not change the fact

that the Agreement states that ARUP's prices would "be uniformly set based on the sum of [its]

established prices for each CPT code."[106]

Finally, even if all the prices PML checked during its limited review of Exhibit A

matched Medi-Cal reimbursement rates, as Drs. Reza and Jalal Zarghami claim, the issue here is

how the Agreement required those prices to be determined, not whether they matched Medi-

Cal's reimbursement rates. The fact that some of the prices in Exhibit A matched Medi-Cal's

reimbursement rates alone does not provide grounds from which a reasonable trier of fact could

conclude that the language of the Agreement required ARUP's prices to match Medi-Cal's

reimbursement rates. Nothing about such a match renders the Agreement's language regarding

ARUP's method for determining pricing ambiguous. In short, what matters is the *process* the

Agreement required, not a witness' memory of the *results* in a missing exhibit.

Accordingly, because the parties' Agreement unambiguously states that ARUP's prices

were to be based on its own established CPT-code prices, PML's extrinsic evidence suggesting

otherwise is inadmissible, and the court can conclude, as a matter of law, that ARUP did not

---

[104] Exh. 2 at 1.

[105] *Id.*

[106] *Id.*

have to base its prices on Medi-Cal reimbursement rates.[107] Thus, there are no grounds from which a reasonable trier of fact could find that ARUP breached the parties' Agreement and its implied covenant of good faith and fair dealing by charging prices higher than Medi-Cal's reimbursement rates, and ARUP is entitled to summary judgment on those counterclaims with regard to that allegation.[108]

Turning to PML's next breach theory, it is undisputed that ARUP changed the prices in its fee schedules from time to time.[109] PML claims that even if the price adjustments in the fee schedules were permitted by the Agreement, a fact PML disputes,[110] some of the prices ARUP actually charged exceeded those listed in its fee schedules.[111]

However, this breach theory is equally unavailing. PML has failed to specifically identify a single instance in which a price ARUP charged for its services exceeded the price listed in its fee schedule then in effect. Instead, PML does no more than reference ARUP's various invoices and fee schedules, almost none of which have been provided to the court, and assert that they show that ARUP charged PML more than it represented it would on its fee schedules. But the court cannot credit such unsupported representations.[112] Nor is it appropriate for the court to

---

[107] *See Willard Pease Oil*, 899 P.2d at 770 ("When the meaning of a contract is clear and unambiguous, extrinsic evidence is generally not admissible to explain the intent of the parties and a court may interpret the contract as a matter of law.").

[108] *See Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968–69 (Utah 2008) (noting that although "[w]hether there has been a breach of good faith and fair dealing is a factual issue," summary judgment on such a claim is appropriate "when reasonable minds could not differ in concluding that" no breach occurred).

[109] *See* ECF No. 87 at 18–19, 29.

[110] *Id.*

[111] *Id.*

[112] *See Clinger v. New Mexico Highlands Univ., Bd. of Regents*, 215 F.3d 1162, 1165 (10th Cir. 2000) ("The party opposing [a motion for summary judgment] must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."); *Stewart*, 176 F.3d 489, at *2.

scour the record in an effort to find support for PML's arguments.[113] Therefore, PML has failed to show the existence of a genuine dispute as to whether ARUP breached the parties' Agreement by charging prices that exceeded those listed on its fee schedules.

In summary, because PML has failed to show a genuine dispute as to whether ARUP breached the parties' Agreement by charging prices exceeding either Medi-Cal's reimbursement rates or the prices listed in ARUP's various fee schedules, PML's breach of contract and good faith counterclaims based on those breach theories fail as a matter of law. Therefore, ARUP is entitled to summary judgment on those counterclaims.

### 2. PML Has Failed to Show the Presence of a Genuine Dispute as to Whether ARUP Committed a Breach through Improper CPT Coding.

The next breach theory ARUP challenges is PML's claim that ARUP breached the Agreement and its implied covenant of good faith and fair dealing by billing CPT codes improperly.[114] PML asserts that the Agreement required ARUP to bill PML using appropriate CPT codes yet ARUP frequently failed to do so, reducing or eliminating PML's ability to obtain reimbursements from Medi-Cal.[115] In moving for summary judgment, ARUP disagrees, arguing that the Agreement contained no requirement that it bill using CPT codes in a way that would ensure PML could be fully reimbursed by Medi-Cal.

PML concedes that the Agreement contains no provision specifically requiring ARUP to bill using CPT codes in way that allowed PML to obtain full reimbursement from Medi-Cal, but

---

[113] *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000); *see also Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978) ("The method by which the relevant facts are called to the court's attention is not rigid. It may be done by affidavit, reference to particular sworn testimony in a trial transcript, or by similar procedures. Whatever procedure is employed, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without relying on the trial court's memory of prior proceedings and without depending on the trial court to conduct its own search of the record.").

[114] ECF No. 30 at 8–11.

[115] *Id.* at 4.

PML argues nonetheless that it "was a fundamental understanding of the parties" that ARUP would do so.[116] However, this argument overlooks the fact that the court looks to evidence of the parties' understanding of their respective contractual duties only when the contract contains ambiguities.[117] PML has not identified a single provision or portion of the Agreement that is ambiguous as to how ARUP must bill for its services. Therefore, there are no grounds from which a reasonable trier of fact could find that ARUP had an obligation to use or reference CPT codes in a particular way when billing for its services, and ARUP is entitled to summary judgment on PML's counterclaims based on its allegations to the contrary.[118]

### B.  Unjust Enrichment Counterclaim

As an alternative to its breach counterclaims, PML asserts in its fourth counterclaim that ARUP was unjustly enriched because PML paid more for ARUP's services than they were worth.[119] Specifically, PML asserts, like in its breach counterclaims, that it was overcharged because the prices ARUP charged for some services were higher than those listed in its fee schedules.[120]

To begin with, it is important to note that to the extent PML seeks to recover under an unjust enrichment theory for the period of April 1, 2014, to May 31, 2018, its counterclaim fails as a matter of law. As discussed above, a party cannot recover under a theory of unjust

---

[116] ECF No. 87 at 12.

[117] *See WebBank*, 54 P.3d at 1145.

[118] *See Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, 197 (Utah 2004) ("Extrinsic evidence is generally not admissible to vary unambiguous terms in a contract."); *Oakwood Vill. LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004) ("While a covenant of good faith and fair dealing inheres in almost every contract . . . . this covenant cannot be read to establish new, independent rights or duties to which the parties did not agree ex ante. . . . [or] create rights and duties inconsistent with express contractual terms." (citations omitted)).

[119] ECF No. 30 at 11–12.

[120] *Id.* at 11.

enrichment for a time during which the parties' relationship was governed by an enforceable contract,[121] and it is undisputed that the parties had an enforceable contract during that time. Of course, whether that contract was enforceable beyond that point remains disputed.[122]

However, even if it were to be shown that no contract existed between the parties after May 31, 2018, PML's unjust enrichment claim still fails because it has not provided any evidence supporting its allegation that ARUP charged prices exceeding those listed in its fee schedules. As discussed above, PML does no more than generally refer to relevant documents and assert that they support its allegations, and this is simply not enough to survive summary judgment.[123] Therefore, ARUP is entitled to summary judgment on PML's unjust enrichment counterclaim as well.

## ORDER

For the foregoing reasons, ARUP's motion to strike is GRANTED, and its motion for summary judgment is GRANTED IN PART and DENIED IN PART. ARUP's motion for summary judgment is GRANTED with regard to PML's breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment counterclaims to the extent they are based on allegations that ARUP overcharged for its services or failed to bill using proper CPT codes. ARUP's motion for summary judgment is DENIED on all other grounds.

Signed August 3, 2022.

BY THE COURT

David Barlow
United States District Judge

---

[121] *See Ashby*, 227 P.3d at 250.

[122] *See supra* notes 70–72 and accompanying text.

[123] *See supra* notes 112–13 and accompanying text.